IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **LINDSEY S. FREEMAN** § | **CIVIL ACTION NO. 2:20-cv-01621** |
| *Plaintiff* § | |
| § | |
| **VERSUS** § | |
| § | |
| **SAVARD LABOR AND MARINE,** § | |
| **INC.** § | |
| *Defendant* § | **JURY TRIAL DEMANDED** |

## PLAINTIFF'S ORIGINAL COMPLAINT

**NOW INTO COURT**, through undersigned counsel, comes Plaintiff, **LINDSEY S. FREEMAN,** for her Original Complaint against **SAVARD LABOR AND MARINE, INC.** Plaintiff hereby states as follows:

## JURISDICTION AND VENUE

1. Plaintiff brings action under the Americans with Disabilities Act of 1990 ("ADA"), as it appears at 42 U.S.C. § 12101 *et seq.*

2. This Court has jurisdiction pursuant to the following statutes:

    a. 28 U.S.C. § 1331, which gives district courts original jurisdiction over civil actions arising under the Constitution, law or treaties of the United States;

    b. 28 U.S.C. § 1343 (3) and (4), which give district courts jurisdiction over actions to secure civil rights extended by the United States government;

3. Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) on or about October 17, 2019 (Charge No. 461-2019-01851).

4. For all claims investigated by the EEOC, the Charging Party is afforded ninety (90) days from his or her receipt of Dismissal and Notice of Suit Rights. The EEOC issued suit rights on September 21, 2020, and Plaintiff files suit within the ninety (90) period afforded by law. *See* Exhibit A.

5. Venue is appropriate in this judicial district under 28 U.S.C. § 1391 (b) because the events that gave rise to this Complaint occurred in the Western District of Louisiana, specifically in Calcasieu Parish, making the Lake Charles Division the most appropriate Division for this suit.

## PARTIES

6. Plaintiff is a citizen of the United States and resides in the city of Lake Charles, Parish of Calcasieu, State of Louisiana, which is in this judicial district.

7. Defendant, **SAVARD LABOR AND MARINE, INC. ("SAVARD")** is a corporation authorized to conduct and is conducting business in the State of Louisiana. At all relevant times, Plaintiff was employed by Savard at its branch facility located in Lake Charles, Louisiana.

## FACTUAL ALLEGATIONS

8. Plaintiff began her employment with Savard as a receptionist on August 5, 2018, earning $13.00 per hour.

9. Shortly after Plaintiff's hire, and due to her exceptional work ethic and job performance, Plaintiff was promoted to a Branch Manager position in November 2018. Plaintiff performed job duties in her capacity as Branch Manager at all times relevant to this suit.

10. In approximately March 2019, Plaintiff suddenly and unexpectedly began experiencing excruciating headaches, which debilitated her to such a severe degree that she had to leave work and seek emergency medical treatment at a nearby emergency room.

11. While the emergency room staff was unable to determine the cause of Plaintiff's debilitating headaches, the staff located an alarming amount of fluid surrounding Plaintiff's brain.

12. Following Plaintiff's emergency room visit, Plaintiff requested time off of work on a couple of occasions to attend various physician appoints to ascertain the cause of her debilitating headaches.

13. From August 5, 2018 through March 2019, Plaintiff did not take any time off of work.

14. When Plaintiff informed the then-Chief Operating Officer (COO), Jerith Naquin, of her emergency room visit and the debilitating headaches, Mr. Naquin informed Plaintiff that there was no need for her to ask for paid time off (PTO) due to her status as a salaried employee. As such, Plaintiff was permitted to take a brief leave of absence, and she communicated with Mr. Naquin on almost a daily basis to keep him abreast of her medical status.

15. At no time whatsoever did any employee of Savard express as concern with Plaintiff taking occasional time off to attend her physician appointments.

16. Subsequent physician and neurological appointments revealed that Plaintiff had fluid on her brain caused by Pseudotumor Cerebri, a disorder caused by spinal fluid pressure on the

brain. Pseudotumor Cerebri causes patients to presents with signs and symptoms of a brain tumor, including migraines, blurred vision, vertigo, and short-term memory loss, among others.

17. After Plaintiff received treatment and her headaches considerably subsided, she returned to work full-time and without restriction on March 25, 2019.

18. On April 8, 2019, Plaintiff spoke to Robinson Almeda, who told her that she was doing a great job and, in order to "keep [Plaintiff] out of tire," he was giving Plaintiff a paid week off. At that time, Mr. Almeda instructed Plaintiff to contact Human Resources for further details.

19. Plaintiff contacted Human Resources Director, Robyn Kusch ("Kusch"), to inquire as to what gave rise to her receiving a paid week off. At that time, Kusch instructed Plaintiff to contact Safety Director, Ralph Frazier ("Frazier").

20. As instructed, Plaintiff contacted Frazier, at which time Frazier relayed that he had no idea why Plaintiff had been instructed to take a week off.

21. Shortly thereafter, Plaintiff received a telephone call from Kusch, wherein Kusch requested that Plaintiff provide a medical release to full-duty so that the information could be provided to Jill Savard ("Savard"), the company owner.

22. Plaintiff emailed Savard directly to inquired about the requested medical release, and Plaintiff obtained the requested release from her physician, indicating that she had been cleared to return to work without restriction.

23. When Plaintiff provided the medical release to Savard, Savard informed Plaintiff that it may take a few days for the medical release to be processed within Savard's Safety Department.

24. Plaintiff was alarmed by Savard's contention that her medical release would take time to process, as Plaintiff had already been in direct communication with Frazier, who had informed Plaintiff that he had already received her medical released.

25. On Friday, April 5, 2019, Jerith Naquin suddenly and unexpectedly resigned from his position with Savard.

26. On Monday, April 8, 2019 – the business day immediately following Mr. Naquin's resignation – Plaintiff received an email from Kusch: 1) demanding that Plaintiff return all company property to Savard; and 2) instructing Plaintiff that her April 12, 2019 check would be disbursed in paper form.

27. The paper disbursement noted in Kusch's April 8, 2019 email was the first time since Plaintiff began her employment that she would not receive a paycheck through direct deposit.

28. On April 9, 2019, Plaintiff forwarded Kusch's email to Savard, carbon copying the Savard Human Resources Department. Upon forwarding the email, Plaintiff expressly indicated her concerns that: 1) she had missed work due to a serious medical condition and 2) she felt that she was being terminated as a direct result of her medical condition and necessitated leave.

29. In response to Plaintiff's email, Jill Savard noted, at 7:53 a.m., that she would get back to Plaintiff with a response shortly.

30. Approximately two (2) hours later, at 9:00 a.m., Plaintiff was terminated by Frazier and Susan Norma via phone call due to purported "absenteeism."

31. Plaintiff had provided physician notes for each and every appointment she had attended during work hours, and she had remained in consistent contact with Jerith Naquin.

32. Plaintiff contacted Mr. Naquin to ask if she could be terminated even if she had produced the physician excuses. In response, Mr. Naquin stated, "apparently so."

33. At 5:42 p.m. on April 9, 2019, and after Plaintiff had already been terminated by Frazier and Norman, Savard responded to Plaintiff's email, stating that she would not be able to respond to Plaintiff's discrimination/retaliation allegations until the following day.

34. Plaintiff responded to Savard at 6:40 p.m., indicating to Savard that she had already been terminated earlier that morning.

35. At no time did Savard respond to Plaintiff's email regarding unlawful discrimination or retaliation.

36. Thereafter, and despite the fact that Plaintiff had been terminated over three (3) days prior, Plaintiff received a letter stating that she was terminated on April 12, 2019.

### FIRST CAUSE OF ACTION: DISABILITY OR, ALTERNATIVELY, "REGARDED AS" DISABILITY DISCRIMINATION IN EMPLOYMENT
*Pursuant to 42 U.S.C. § 12101 et seq.*

37. Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

38. Title I of the ADA prohibits covered employers from discriminating against a qualified individual with a disability because of the disability with regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms and conditions, and privileges of employment. 42 U.S.C. § 12112(a).

39. Defendant is an "employer" as defined in 42 U.S.C. § 12111(5)(A). Defendant is engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year.

40. At all times relevant to this suit, Plaintiff was qualified for the position of Branch Manager. Not only was Plaintiff specifically promoted to the position, but she performed her job duties satisfactorily for several months. As such, with or without reasonable accommodation, Plaintiff can perform the essential functions of the Branch Manager position.

41. At no time during Plaintiff's employment with Defendant did Plaintiff receive any written or verbal reprimands of any kind.

42. Plaintiff was "disabled" as defined in 42 U.S.C. § 12102(1)(A). Plaintiff was diagnosed with Pseudotumor Cerebri, which, when active, significantly impaired her major life activities, including, but not limited to: seeing, thinking, focusing/concentrating, communicating, and working. While Plaintiff's disorder was active, Plaintiff experienced excruciating migraine headaches, blind spots in vision, blackouts, and extreme nausea, all of which rendered her bedridden or otherwise incapable of performing basic life functions.

43. As an alternative cause of action, Savard regarded Plaintiff as disabled by either: 1) mistakenly believing that Plaintiff had a physical impairment that substantially limited one or more major life activities or 2) mistakenly believed that an actual, non-limiting impairment substantially limited one or more major life activities.

44. Regardless of whether Plaintiff's condition is deemed a "disability" as defined by the ADA, Defendant perceived her as having an impairment.

45. Plaintiff requested an accommodation in the form of brief leaves of absence so that she could attend physician appointments for the diagnosis and treatment of the condition underlying her excruciating, debilitating headaches. Savard, through the actions of Jerith Naquin, permitted these brief absences without any issue whatsoever.

46. Plaintiff's requests for leave were short-term in nature and ended upon the diagnosis and treatment of her condition within one (1) month after the symptoms caused Plaintiff to present to the emergency room.

47. Very shortly after Plaintiff returned to work without restriction, Plaintiff was terminated for the very absences she accrued while obtaining diagnosis and treatment of the condition underlying her excruciating headaches.

48. Plaintiff's disability (or, alternatively, perceived disability) was a motivating factor in Savard's decision to terminate her Plaintiff's employment. Plaintiff was terminated shortly after she returned to work for "excessive absenteeism," despite the fact that: 1) Plaintiff had produced all physicians' notes accompanying her absences; and 2) her absences were directly tied to the diagnosis and treatment of her disabling condition, of which Savard was readily aware.

49. Wherefore, Plaintiff asks this Honorable Court to find **SAVARD LABOR AND MARINE, INC.** liable for the violation of Title I of the Americans with Disabilities Act of 1990.

**SECOND CAUSE OF ACTION:**
**ADA RETALIATION**
*Pursuant to 42 U.S.C. § 12203(a) et seq.*

50. Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

8

51. Plaintiff requested an accommodation in the form of brief leaves of absence so that she could attend physician appointments for the diagnosis and treatment of the condition underlying her excruciating, debilitating headaches. Savard, through the actions of Jerith Naquin, permitted these brief absences without any issue whatsoever.

52. Plaintiff's requests for leave were short-term in nature and ended upon the diagnosis and treatment of her condition within one (1) month after the symptoms caused Plaintiff to present to the emergency room.

53. By requesting a reasonable accommodation, Plaintiff engaged in protected activity under the ADA.

54. Very shortly after Plaintiff returned to work without restriction, Plaintiff was terminated for the very absences she accrued while obtaining diagnosis and treatment of the condition underlying her excruciating headaches.

55. Plaintiff's protected activity directly resulted in Savard's decision to terminate her Plaintiff's employment. Plaintiff was terminated shortly after she returned to work for "excessive absenteeism," despite the fact that: 1) Plaintiff had produced all physicians' notes accompanying her absences; and 2) her absences were directly tied to the diagnosis and treatment of her disabling condition, of which Savard was readily aware.

56. Wherefore, Plaintiff asks this Honorable Court to find **SAVARD LABOR AND MARINE, INC.** liable for the violation of Title I of the Americans with Disabilities Act of 1990.

*{Remainder of Page Intentionally Left Blank}*

## PRAYER:

**WHEREFORE**, Plaintiff requests that this Honorable Court enter judgment against Defendant providing the following relief:

(a) All damages to which Plaintiff may be entitled, including but not limited to back pay, reimbursement for lost position and training, social security and other benefits, front pay, and any and all statutory relief;

(b) Reasonable attorney's fees, with conditional awards in the event of appeal;

(c) Pre-judgment interest at the highest rate permitted by law;

(d) Post-judgment interest from the judgment until paid at the highest rate permitted by law;

(e) Costs, including expert fees;

(f) Reasonable and necessary medical care and expenses in the past and future;

(g) Mental anguish damages in the past and future;

(h) Injunctive relief; and

(i) Such other and further relief, at law or in equity, to which Plaintiff may be entitled.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of Federal Rules of Civil Procedure, the Plaintiff demands trial by jury in this action of all issues so triable.

*{Signature Page to Follow}*

        **Respectfully Submitted**,

        **SUDDUTH & ASSOCIATES, LLC**
        Attorneys-at-Law
        1109 Pithon St.
        Tel: (337) 480- 0101
        Fax:(337) 419- 0507
        Email: james@saa.legal

**BY:** */s/ James E. Sudduth, III*
        **JAMES E. SUDDUTH, III, #35340**
        **KOURTNEY L. KECH, #37745**
        **PIERCE A. RAPIN, #38579**
        *Counsel for Plaintiff*