UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

LINDSEY S FREEMAN                          CASE NO.  2:20-CV-01621

VERSUS                                     JUDGE JAMES D. CAIN, JR.

SAVARD LABOR & MARINE INC                  MAGISTRATE JUDGE KAY


MEMORANDUM RULING

Before the court is a Motion for Summary Judgment [doc. 18] filed by defendant

Savard Labor and Marine, Inc., relating to the employment discrimination suit brought by

plaintiff Lindsey Freeman. Ms. Freeman opposes the motion. Doc. 23.

I.
BACKGROUND

This suit arises from Ms. Freeman's employment with Savard as manager of its

Lake Charles branch from November 2018 to April 2019, when she was laid off.[1] In

February 2019 Ms. Freeman began to experience frequent and severe headaches. Doc. 18,

att. 4, p. 57. She ultimately received a diagnosis of pseudotumor cerebri, a headache

disorder caused by increased intracranial hypertension, and was treated with three spinal

taps. *Id.* at 62, 108. During February and March 2019, Savard COO Jerith Naquin

informally approved her requests for time off and told her she was not required to file

formal documentation. *Id.* at 60–66, 70–71; doc. 18, att. 7, pp. 24–28. He also approved

---

[1] Ms. Freeman was hired as receptionist at the Lake Charles branch in August 2018 and promoted to branch manager in November. Doc. 18, pp. 34–40.

her request for additional assistance at the Lake Charles branch. Doc. 18, att. 4, p. 67. Ms. Freeman returned to work without restriction on March 25, 2019. *Id.* at 78.

Mr. Naquin's responsibilities as COO included employee management and he reported to Savard CEO Jill Savard. Doc. 18, att. 6, p. 13. During this time Ms. Savard was not involved in decisions on employee requests for time off work. Doc. 18, att. 7, pp. 23–24. Mr. Naquin abruptly left the company on April 5, 2019, to start his own business. Doc. 18, att. 6, pp. 20–21. Ms. Savard took over COO duties and began auditing the branches to become more familiar with the company's front line operations. *Id.* at 22. She stated that she had previously identified the Lake Charles branch as underperforming. *Id.* at 37–40. Over the next few days, she testified, she identified Ms. Freeman as a candidate to layoff due to poor performance at the Lake Charles branch and included her on a list with seven others for staff reduction. *Id.*

In conjunction with this review Ms. Savard also learned that Ms. Freeman had been absent recently, including on April 8, and instructed that Ms. Freeman was to be given a week off when she returned. *Id.* at 27–29, 73–75. Ms. Savard admitted that she had heard Ms. Freeman was having issues with headaches and "was . . . pushing for the due diligence to make sure that we had not missed anything in our evaluation of Lindsey." *Id.* at 32. She also had her staff investigate whether there was a record of medical excuses or restrictions for Ms. Freeman's prior absences. *Id.* at 68–72. When Ms. Freeman returned, on April 9, she was told that she would need to provide a work release. Doc. 18, att. 4, pp. 80–81. Ms. Freeman obtained the release and provided it to safety manager Ralph Frazier that day. *Id.* at 81–83. The document, entitled "Disability Certificate," was signed by Ms. Freeman's

neurologist and stated that she was "[s]ufficiently recovered to resume a normal workload" with "[n]o restriction or limitation." Doc. 23, att. 26.

After Ms. Freeman had provided the excuse, on the afternoon of April 9, she received an email from Savard HR manager Robyn Kusch. Doc. 18, att. 4, pp. 88–89. In that email Ms. Kusch stated that Ms. Freeman was required to return her Savard belongings and that her next paycheck would be issued in paper rather than via direct deposit. *Id.* Ms. Freeman emailed Ms. Savard the next morning, raising concerns. Doc. 23, att. 10. Later that morning she was informed in a telephone call with Savard employees Ralph Frazier and Susan Norman that she was being terminated because of her absences. Doc. 18, att. 4, pp. 84–85. When Ms. Freeman protested that her absences were medically excused, Mr. Frazier informed her that it did not matter. *Id.* at 84. Ms. Freeman emailed Ms. Savard that evening, stating that she had been terminated from Savard "due to medically excused absences that had been approved by corporate." Doc. 23, att. 10, p. 1.

Ms. Freeman filed a charge of discrimination with the EEOC on October 7, 2019, and received a dismissal and notice of suit rights on September 21, 2020. Doc. 1, att. 1. She then filed suit against Savard in this court, raising claims of discrimination and retaliation under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* Doc. 1. Specifically, she alleges that Savard terminated her because of her disability and in retaliation for the accommodations she requested/received for that disability. *Id.* Savard now moves for summary judgment on both claims.

## II.
### SUMMARY JUDGMENT STANDARD

Under Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). He may meet his burden by pointing out "the absence of evidence supporting the nonmoving party's case." *Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003). The non-moving party is then required to go beyond the pleadings and show that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To this end he must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

### III.
### LAW & APPLICATION

#### A. Discrimination

The ADA prohibits covered entities from "discriminat[ing] against a qualified individual on the basis of disability in regard to . . . discharge of employees, employee compensation, job training, and other terms, conditions and privileges of employment." 42 U.S.C. § 12112(a). To prevail on this claim, a plaintiff must present direct or circumstantial evidence that her disability was a motivating factor for an adverse employment action. *Seaman v. CSPH, Inc.*, 179 F.3d 297, 300 (5th Cir. 1999). When circumstantial evidence is involved, the court uses the framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) to analyze the claim. *Seaman*, 179 F.3d at 300. Under that framework, the plaintiff must first establish a prima facie case by showing that (1) she is disabled under the meaning of the ADA; (2) she was qualified for the job; and (3) she was subject to an adverse employment decision on account of her disability. *Cannon v. Jacobs Field Servs. N. Am., Inc.*, 813 F.3d 586, 590 (5th Cir. 2016). If the plaintiff makes this showing, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory or nonretaliatory motive for its action. *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007). At the final stage, the burden shifts back to plaintiff to show that the employer's explanation is not true and is instead a pretext for the real discriminatory and/or retaliatory purpose. *Id.*

Savard moves for summary judgment based on the first and third elements of the prima facie case, asserting that Ms. Freeman cannot show (1) that she is disabled within the meaning of the ADA or (2) that she was laid off because of her condition.

### 1. Whether condition qualified as a disability

The ADA defines a disability as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment."[2] 42 U.S.C. § 12102(1). A disability determination "is not necessarily based on the name or diagnosis of the impairment the person has, but rather on the effect of that impairment on the life of the individual." *Deas v. River West, L.P.*, 152 F.3d 471, 478 (5th Cir. 1998) (cleaned up; internal quotations omitted). Factors relevant to this determination include "(1) the nature and severity of the impairment; (2) its duration or expected duration; and (3) its actual or expected permanent or long-term impact." *Gonzales v. City of New Braunfels, Tex.*, 176 F.3d 834, 836 (5th Cir. 1999). Temporary impairments of short duration, with little or no long-term impact, usually do not qualify as a disability under the ADA. *EEOC v. Chevron Phillips Chem. Co., LP*, 570 F.3d 606, 619 (5th Cir. 2009); *Pryor v. Trane Co.*, 138 F.3d 1024, 1026 (5th Cir. 1998). Examples of such non-qualifying impairments include "broken limbs, sprained joints, concussions, appendicitis, and influenza." *Harper v. Fort Bend*

---

[2] "Major life activities" means "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(j)(1). An impairment is "substantially limiting" if it results in (a) an inability "to perform a major life activity that the average person in the general population can perform" or (b) a significant restriction "as to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." *Id.* Major life activities include "reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A)(1). Savard does not appear to dispute that the headaches were substantially limiting; instead, it focuses on the duration.

*Indep. Sch. Dist.*, 2017 WL 1881971, at \*11 (S.D. Tex. May 9, 2017). A plaintiff may qualify under the record of impairment prong if she shows that she "has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more of the major life activities." *Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112, 1120 (5th Cir. 1998) (quoting 29 C.F.R. § 1630.2(k)).

Ms. Freeman maintains that she can make a prima facie case that she was actually disabled or had a record of such a disability. In her deposition she recounted severe pain from her headaches, necessitating two trips to the emergency room. Doc. 18, att. 4, pp. 58–66. Although she admits to returning to work without restriction on March 25, she also notes several absences due to her condition in the preceding four weeks.

Given the short duration of Ms. Freeman's condition, the court is unable to determine that she was actually disabled or had a record thereof under the ADA. She may prevail under the "regarded as" prong, however, by showing that Savard perceived her as having a qualifying impairment. The prima facie case fails if it is shown that the condition was objectively transitory and minor. *Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 302–03 (5th Cir. 2020); *Willis v. Noble Environ. Power, LLC*, 143 F.Supp.3d 475, 484 (N.D. Tex. 2015).

Ms. Freeman was laid off just two weeks after her return. Her return to work clearances demonstrated that she was presently able to work; they did not offer any guarantee that her condition was cured rather than episodic. Whether Savard believed Ms. Freeman's condition was no longer cause for concern is an issue of credibility for the jury

to decide. Ms. Freeman has thus met her burden, for the purposes of this motion, of showing that she was disabled within the meaning of the ADA.

### 2. Whether Ms. Freeman was laid off because of her alleged disability

Savard next maintains that Ms. Freeman cannot show her dismissal was motivated by her alleged disability. To this end it relies on Ms. Savard's lack of knowledge of Ms. Freeman's specific condition, Ms. Freeman's presentation of return to work clearances, Ms. Savard's testimony regarding underperformance of the Lake Charles branch, and the fact that seven other employees were laid off at the same time. The record shows, however, that Ms. Savard was aware Ms. Freeman had recently been having headaches and missed work due to this condition. Savard representatives cited this factor, rather than the performance of the Lake Charles branch, when they informed Ms. Freeman of her termination. Though Savard offers a legitimate reason for her dismissal, Ms. Freeman has put forth persuasive evidence that concerns about her medical condition and related absences might have been the motivating factor. Accordingly, she can make out a prima facie case and, for the purposes of this motion, show that Savard's legitimate reason is a pretext for discrimination. Summary judgment must be denied on the discrimination claim.

### B. Retaliation

The ADA prohibits an employer from "discriminat[ing] against an individual because such individual has opposed any act or practice made unlawful by [the ADA] or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [the ADA]." 42 U.S.C. § 12203(a). The *McDonnell Douglas* framework applies when circumstantial evidence is used to support

such claims. *Lyons*, 264 F.3d at 303–04. To establish a prima facie case, the plaintiff must show that: (1) she engaged in activity protected by the ADA; (2) she suffered an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse action. *Id.* Savard moves for summary judgment on this claim based on Ms. Freeman's inability to show a causal connection.[3]

Temporal proximity alone cannot establish the required causal link unless the two events are "very close." *Lyons*, 964 F.3d at 305 (quoting *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268 (2001)). The Fifth Circuit has held "that a six-and-a-half-week timeframe is sufficiently close, but that a five month lapse is not close enough, without other evidence of retaliation, to establish the 'causal connection' element of a prima facie case of retaliation." *Id.* Here the temporal proximity is also a matter of weeks. Additionally, as shown above, Ms. Freeman has shown that she may rebut the company's proffered legitimate explanation by pointing to its statements relating to her absences. Accordingly, this claim can also withstand summary judgment.

---

[3] Ms. Freeman identifies her request for accommodations, in the form of time off, as the protected activity. It is "undisputed that making a request for a reasonable accommodation under the ADA may constitute engaging in a protected activity." *Hernandez v. Clearwater Transp., Ltd.*, 550 F.Supp.3d 405, 419–20 (W.D. Tex. 2021) (quoting *Tabatchnik v. Cont'l Airlines*, 262 F. App'x 674, 676 (5th Cir. 2008)). Savard does not contest her ability to satisfy this prong.

## IV.
### CONCLUSION

For these reasons, the Motion for Summary Judgment [doc. 18] will be **DENIED**.

**THUS DONE AND SIGNED** in Chambers on the 27th day of June, 2023.

JAMES D. CAIN, JR.
**UNITED STATES DISTRICT JUDGE**